**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

ACELA INVESTMENTS LLC,
ACELA FIRST INVESTMENTS LLC,
ACELA NEW INVESTMENTS LLC,
and DR. STEFAN AIGNER,

      Plaintiffs,

    v.

RAYMOND DIFALCO and MANISH SHAH,

    Defendants.

RAYMOND DIFALCO,

      Counterclaim and Third-Party
      Plaintiff,

    v.

 DR. STEFAN AIGNER,

      Counterclaim Defendant,

    and

INSPIRION DELIVERY SCIENCES, LLC,

      Third Party Defendant.

C.A. No. 2018-0558-AGB

**ORDER DENYING PLAINTIFFS' APPLICATION FOR
CERTIFICATION OF INTERLOCUTORY APPEAL
AND MOTION FOR STAY PENDING APPEAL**

WHEREAS:

A. Inspirion Delivery Sciences, LLC ("IDS" or the "Company") is the successor to a private pharmaceutical venture that was co-founded by Manish Shah, Raymond DiFalco, and Stefan Aigner. Its LLC Agreement contains a bespoke governance structure (i) that names Aigner and DiFalco as Chief Executive Officer and President, respectively, and provides that they each must perform their duties subject to the "advice and consent" of the other, and (ii) that entitles either (a) Aigner or (b) DiFalco and Shah together to veto any action of its board,[1] subject to a provision intended to address conflicts of interest.

B. On November 13, 2018, the parties agreed to bifurcate this action so that their claims relating to the governance of the Company (the "Governance Claims") would be tried on an expedited basis in December 2018 while their remaining claims for damages (the "Remaining Claims") would be held in abeyance.

C. On May 17, 2019, the court issued a 94-page post-trial memorandum opinion (the "Opinion") in which it ruled in favor of DiFalco and Shah and against Aigner and his affiliated entities (the "Aigner Parties") on all of the Governance Claims. Among other things, the court found under 6 *Del. C.* § 18-802 that it is not reasonably practicable to carry on the business of IDS in conformity with its LLC

---

[1] Because Shah resigned from the board on July 6, 2018, DiFalco alone holds the veto right that originally was afforded to DiFalco and Shah together. Opinion at 39, 75.

2

Agreement and declared that IDS should be dissolved and that a liquidating trustee should be appointed to wind up its affairs.

D.   On May 24, 2019, after the parties notified the court that they jointly had selected Derek C. Abbott, Esq. to serve as the Liquidating Trustee, the court entered a judgment on the Governance Claims (the "Implementing Order").

E.   On May 31, 2019, the court entered an order formally appointing the Liquidating Trustee and authorizing him to, among other things, "identify and marshal the assets of IDS and dispose of those assets in the manner the Liquidating Trustee determines is in the best interests of IDS and designed to maximize the value of IDS, including by creating and implementing a sales process for IDS's assets" (the "Trustee Order").[2] The Trustee Order expressly provides that any "sale process shall be approved by the Court after application by the Liquidating Trustee."[3]

F.   On June 10, 2019, the Aigner Parties applied for certification of an interlocutory appeal of the Memorandum Opinion, Implementing Order, and Trustee Order. That same day, the Aigner Parties moved for a stay pending appeal that they describe as being "limited" in nature.

---

[2] Trustee Order ¶ 5 (Dkt. 149).

[3] *Id.* For the avoidance of doubt, the requirement in the Trustee Order for approval of the sale process is intended to require court approval of any specific transaction or plan that the Liquidating Trustee recommends to sell the Company or its assets in connection with winding up its affairs.

3

G. On June 20, 2019, DiFalco and Shah filed an opposition to the application for certification of interlocutory appeal and to the motion for a stay pending appeal. That same day, the Liquidating Trustee submitted a letter taking no position on the request for certification of an interlocutory appeal but explaining that the "so-called 'limited' stay requested pending [appeal] will substantially curtail him in the performance of his duties pursuant to [the Trustee Order]."[4]

NOW, THEREFORE, this 28th day of June, 2019, IT IS HEREBY ORDERED, ADJUDGED, and DECREED as follows:

*Application for Certification of Interlocutory Appeal*

1. Supreme Court Rule 42 provides that an interlocutory appeal will not be certified "unless the order of the trial court decides a substantial issue of material importance that merits appellate review before a final judgment."[5]

2. In my view, although the Opinion decided a substantial issue of material importance (*i.e.*, that it is not reasonably practicable for IDS to carry on its business in accordance with its LLC Agreement), appellate review is not warranted before the Liquidating Trustee has recommended and the court has approved (conditioned on appellate review) a transaction or plan to wind up the Company's

---

[4] Dkt. 161 at 1-2.
[5] Sup. Ct. R. 42(b)(i).

4

affairs so that that issue and the rulings in the Opinion can be reviewed in a single appeal.

3. Supreme Court Rule 42 states that "[i]nterlocutory appeals should be exceptional, not routine, because they disrupt the normal process of litigation, cause delay, and can threaten to exhaust scarce party and judicial resources."[6] Rule 42 sets forth eight criteria that "the trial court should consider" when evaluating an interlocutory appeal.

4. The only criterion the Aigner Parties cite is that "[r]eview of the interlocutory order may serve considerations of justice."[7] According to the Aigner Parties, they "will suffer significant harm if forced to wait for resolution of the remaining claims" before filing an appeal because their appeal "would be moot as a practical matter" if they "cannot appeal the Court's finding that IDS should be dissolved until a final order has been entered."[8]

5. The court disagrees that appellate review at this time will serve considerations of justice, or that denial of appellate review at this time will "moot" the Aigner Parties' right to appeal. To the contrary, granting an interlocutory appeal now would create the prospect of piecemeal appeals concerning, among other

---

[6] Sup. Ct. R. 42(b)(ii).

[7] Pls.' Application ¶¶ 14-18 (Dkt. 157).

[8] *Id.* ¶ 17.

possible matters, the court's (i) rulings in the Opinion, (ii) approval of a transaction or plan to be recommended by the Liquidating Trustee, and (iii) disposition of the Remaining Claims.

6.     As noted above, the Trustee Order expressly requires that the Liquidating Trustee obtain the court's approval before consummating a sale process. Thus, the Aigner Parties' desire to appeal the court's determination in the Opinion that dissolution is warranted will not be moot if the Aigner Parties are required to wait until after a sale process has occurred—but no sale transaction has closed—before pursuing an appeal.   In that regard, a stay pending appeal of the consummation of any transaction or plan could be entered to ensure an opportunity for appellate review of the Governance Claims once the related issue of remedy has been adjudicated.

7.     To be clear, the court is not suggesting that it should resolve the Remaining Claims before the Aigner Parties are afforded an opportunity for appellate review, but only that the Governance Claims and the specific remedy for those claims should be fully adjudicated before any appeal.   Proceeding in this manner will minimize the potential for piecemeal appeals and conserve judicial resources in addressing a statutory issue this court frequently encounters, *i.e.*, decreeing dissolution of a limited liability company when it has been proven that "it

6

is not reasonably practicable to carry on the business in conformity with a limited liability company agreement."[9]

8.    For the foregoing reasons, the application for certification of an interlocutory appeal is denied.

*Motion for Stay Pending Appeal*

9.    The Aigner Parties' motion for a stay seeks to prevent the Liquidating Trustee from taking three actions pending the outcome of an appeal:  (i) soliciting interest from or providing information to third-party buyers; (ii) consummating a sale of the Company; or (iii) terminating employees.  The second limitation is a non-issue because, for the reasons explained above, the court agrees that any of the parties should be afforded the opportunity to pursue appellate review before a sale of the Company is consummated once a proposed transaction or plan is in place. The first and third limitations are addressed below.

---

[9] 6 *Del. C.* § 18-802.  Some examples of court-ordered dissolutions of LLCs include:  *In re: GR BURGR, LLC*, 2017 WL 3669511, at *1 (Del. Ch. Aug. 25, 2017) (granting motion for dissolution and subsequently appointing liquidating trustee to sell assets); *Meyer Nat. Foods LLC v. Duff*, 2015 WL 3746283, at *6 (Del. Ch. June 4, 2015) (granting motion for dissolution of company that was later wound up by its managing member); *In re Shawe & Elting LLC*, 2015 WL 4874733, at *41 (Del. Ch. Aug. 13, 2015) (ordering dissolution and sale of LLC's assets); *Vila v. BVWebTies LLC*, 2010 WL 3866098, at *14 (Del. Ch. Oct. 1, 2010) (Strine, V.C.) (ordering dissolution and appointing liquidating trustee); *Fisk Ventures, LLC v. Segal*, 2009 WL 73957, at *1 (Del. Ch. Jan. 13, 2009) (granting motion for, and ordering, dissolution); *In re Silver Leaf, L.L.C.*, 2005 WL 2045641, at *1, *13 (Del. Ch. Aug. 18, 2005) (same); *Haley v. Talcott*, 864 A.2d 86, 87, 98 (Del. Ch. 2004) (Strine, V.C.) (granting motion for dissolution and ordering parties to submit dissolution plan).

10. When considering a motion for a stay pending appeal, the reviewing court is required: "(1) to make a preliminary assessment of likelihood of success on the merits of the appeal; (2) to assess whether the petitioner will suffer irreparable injury if the stay is not granted; (3) to assess whether any other interested party will suffer substantial harm if the stay is granted; and (4) to determine whether the public interest will be harmed if the stay is granted."[10]

11. With respect to the first element, the Aigner Parties have not identified any issue on which they are likely to succeed on appeal. They merely assert in conclusory fashion that there are "several litigable issues, including the interpretation of Section 5.14 and whether a remedy other than dissolution should have been entered."[11] The court respectfully submits that the Aigner Parties are unlikely to succeed on appeal for a number of reasons, including the two that follow.

12. First, as the Opinion discusses in great detail, the governance structure the parties agreed upon in the LLC Agreement provides a recipe for deadlock where, as was demonstrated at trial, the principals do not trust each other and have fundamentally different perspectives on important issues because (i) the LLC Agreement affords Aigner and DiFalco co-equal rights to manage the Company and to veto board actions and (ii) the provision in the LLC Agreement intended to

---

[10] *Kirpat, Inc. v. Del. Alcoholic Beverage Control Comm'n*, 741 A.2d 356, 357 (Del. 1998).
[11] Pls.' Application ¶ 22.

8

address conflicts of interest at the board level (Section 5.14) has proven to be unworkable. Even if the court's interpretation of Section 5.14 were incorrect in some respect, the deadlocks between Aigner and DiFalco would continue because there currently is no Independent Representative to vote for DiFalco and the parties' history demonstrates that they would deadlock on selecting a replacement.[12]

13. Second, decreeing the dissolution of a limited liability company is a discretionary remedy under 6 *Del. C.* § 18-802 that is reviewed under an abuse of discretion standard.[13] In that regard, the Opinion contains detailed factual findings concerning the existence of deadlocks on important issues that support the court's exercise of discretion to decree dissolution in this case.[14]

14. With respect to the second element, the Aigner Parties have not shown that they will suffer irreparable injury if a stay is not granted to prevent the Liquidating Trustee from (i) soliciting interest from or providing information to third-party buyers or (ii) terminating employees. To the contrary, their concerns on

---

[12] *See* Opinion at 77.

[13] *Gotham P'rs, L.P. v. Hallwood Realty P'rs, L.P.*, 817 A.2d 160, 175 (Del. 2002) ("This Court reviews the Court of Chancery's fashioning of remedies for abuse of discretion."); *see also Shawe v. Elting*, 157 A.3d 152, 167 (Del. 2017) (reviewing and affirming under abuse of discretion standard lower court's decision to appoint custodian under 8 *Del. C.* § 226 to sell corporation).

[14] *See* Opinion at 68-75.

these points are speculative and, as the Liquidating Trustee has indicated, would hamstring his ability to perform his duties under the Trustee Order.[15]

15.    In order to implement a sale process, the Liquidating Trustee must be able to solicit third-party buyers.  In doing so, the Liquidating Trustee can employ confidentiality agreements and other measures that are routinely used to protect proprietary information.  Having the ability to terminate employees, moreover, is necessary for the Liquidating Trustee to be able to exercise his authority over management of the "daily operations" of IDS as set forth in the Trustee Order.[16]

16.    With respect to the third and fourth elements, no showing has been made that any other interested party or the public will be harmed by denying the stay.  If anything, the public interest would be served best by denying the stay and winding up the Company's affairs as quickly as possible in order to maximize the chances of making the Company's abuse-deterrent technology available to the public on a larger scale.

17.    For the foregoing reasons, the motion for a stay pending appeal is denied.

Chancellor Andre G. Bouchard

_____

[15] Dkt. 161.

[16] Trustee Order ¶ 5.

10